In re Anonymous No. 53 D.B. 78

Disciplinary Board Docket no. 53 D.B. 78.

HAMMERMAN, *Member,* July 25, 1980— Pursuant to Pa.R.D.E. 218(c)(5), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

In 1965, petitioner was convicted by a judge and jury on charges of receiving stolen goods and conspiracy. Petitioner received a sentence of 23 months probation. Petitioner has been pardoned by Governor [ ] of the crimes for which he was convicted, in 1976.

A complaint was filed with the local bar associa-

tion grievance committee sitting in [ ], charging petitioner with violations of the Canons of Ethics, arising from his involvement in the events which led to his conviction. Petitioner was disbarred from the practice of law in the Commonwealth of Pennsylvania by the Supreme Court's order dated November 4, 1965. A Petition for Reinstatement was filed on October 20, 1978. This matter was referred to a hearing committee. One member of the hearing committee, recused himself as he had been a character witness for petitioner at his 1965 criminal trial. There were several hearings held on May 2 and 3, 1979 and September 28 and November 19, 1979. A report of the hearing committee was filed on March 20, 1980 in which reinstatement was denied. Petitioner filed his brief on exceptions on May 1, 1980, with oral argument requested. The Office of Disciplinary Counsel filed a brief opposing exceptions on May 20, 1980. Oral argument was heard on June 5, 1980 at 3:00 p.m. by Chairperson Mary Bell Hammerman, Esq., and members John C. Anderson, Esq. and Raymond Pearlstine, Esq. The matter was referred to this board for review and recommendation to your honorable court.

## II. DISCUSSION

The findings of fact by the hearing committee are supported by the evidence and adopted by this board as its own. They can be summarized as follows:

Petitioner was admitted to the Bar of the Supreme Court of Pennsylvania on February 3, 1953. Following that admission he was admitted to practice in the subordinate courts of Pennsylvania and the United States District Court of the Eastern District of Pennsylvania. From February 3, 1953 until

November 4, 1965 petitioner practiced law in the Pennsylvania Courts and in the United States District Court for the Eastern District of Pennsylvania as an individual practitioner and as a member of a law firm.

Petitioner was arrested in 1961 and charged wth receiving stolen goods and conspiracy. In 1962, petitioner was indicted and charged with having committed the crimes of receiving stolen goods and conspiracy. Following those indictments petitioner attempted to "fix" the criminal charges and retained an attorney for that purpose. In 1965, petitioner came on for trial before Common Pleas Judge [   ] where he entered a plea of nolo contendre and was adjudged guilty of receiving stolen goods and conspiracy (44 t.v. sets and 10 cases of whiskey).

In 1965, petitioner appeared before Judge [   ] who suspended sentence and placed petitioner on 23 months probation. Following the criminal indictments a complaint was filed with the local bar association grievance committee charging petitioner with violations of the Canons of Ethics and unethical conduct (criminal) relative to the indictment (and conviction) charging the crimes of receiving stolen goods and conspiracy. In 1965, the citation came on for disposition before a three judge panel.

In 1965 that panel certified to the Supreme Court of Pennsylvania its order entered in 1965 disbarring the petitioner from practice before the Common Pleas Court of the [   ] Judicial District.

On November 4, 1965 the Supreme Court of Pennsylvania in light of the Common Pleas Court Order of 1965, entered an order disbarring petitioner and striking his name from the Roll of Members of the Bar of the Supreme Court of Pennsylvania on June 15, 1966. The Governor's pardon was

granted on petitioner's assurance he had no desire to retrn to the practice of law as he was then an established psychologist and preferred that profession.

Petitioner initially insisted he did not remember whether he assured the Pardon Board he had no desire to return to practice law but later admitted he had specifically so informed the board. Petitioner advertises himself as a marriage counsellor and expert in sex therapy by virtue of a Ph.D degree in psychology granted by the [　] University, [　].

Petitioner never attended any classes to earn that degree and qualified only by way of several correspondence courses sent him by [　] University and the submission (allegedly) of a thesis. [　] University was closed down in April 1957 by the Attorney General of [　] for selling and granting fraudulent degrees and its president, the individual who signed petitioner's diploma was subsequently convicted for selling fraudulent academic degrees.

Petitioner practices psychotherapy, marriage counselling and sexual therapy by virtue of his Ph.D. from [　] University and his formal training as an attorney (J.D. degree) although he has had no formal training and is not academically qualified so to do. Petitioner advertises as a psychologist and practices psychology albeit he has had no formal academic training as such and is not licensed to do so.

Petitioner, during the years 1969 through 1974 was involved with a Maryland restaurant which enjoyed a license to sell alcoholic beverages. Petitioner knew or should have known that the restaurant enjoyed the privilege of a beer and wine license issued by the Baltimore Liquor Control Board. The beer and wine license renewal applications for the

years 1969-1974 contain the name of the petitioner and the signature of the petitioner, as a 20 percent owner of the license and was known or should have been known to petitioner. The said renewal application for petitioner's Maryland corporation incorrectly states that petitioner was never convicted of a felony.

Petitioner incorrectly answered many questions contained in the reinstatement questionnaire. Petitioner during his disbarment did not keep abreast of the development of the law of Pennsylvania and is not familiar with the current practices and procedures.

The exceptions of petitioner, inter alia, were directed toward any weight given to his conduct leading up to and preceding his criminal conviction. Specifically, petitioner objects to testimony relative his obtaining a degree of Doctor of Philosophy from the [   ] University in [   ]. The degree was obtained from a mail order "diploma mill" in 1955, ten years before his conviction and disbarment. While petitioner could not anticipate his disbarment in 1965, and the reviewing panel does not deny the validity of this exception, it is, however, indicative of the character of petitioner that he eventually did utilize this questionable degree to his handsome profit. Petitioner holds himself out as a certified sex therapist, engaged in marriage and family counselling based on the degree so obtained.

Further, petitioner objects to the finding that he represented to the pardon board that he was a practicing psychologist, and that he would not, in the future, attempt to practice law. Disciplinary Counsel presented a witness, who testified as the Secretary of the Pardons Board, Department of Justice, Commonwealth of Pennsylvania. He stated that pe-

titioner responded to a question from the Lieutenant Governor that he had no intention of returning to Pennsylvania as a lawyer and that he was a licensed psychologist in Florida.

"Q. Was petitioner asked when he was before the Pardons Board, was he asked by a member of the Pardon Board, whether or not he intended to apply again to the practice of law if he was pardoned?

A. Yes, he was.

Q. And do you recall petitioner's response? Petitioner's Counsel: Just a moment. I would like his response and not to lead him, please.

BY Disciplinary Counsel.

Q. Do you recall petitioner's response to the Pardons Board?

A. Yes, I do. He—well, the usual procedure is the Lieutenant Governor always talks to the applicant. That's one of the reasons why we make sure that they appear before the board. And they ask them why do they want a pardon. This is asked of practically all of them. And petitioner's basic response was that he was a psychologist in Florida, that he was working in that field in that area, he had no intention of returning to Pennsylvania to get—to be reinstated as a lawyer, and that he was—he wanted to be a—have no detriment or deterrent to preclude him from following his new field in psychology.

Q. You prepared the comments in the recommendation to the Governor, is that right?

A. Yes, I did.

Q. Would you look at Paragraph Number 2 from the—the last paragraph from the bottom, and would you read that to the panel, please?

A. You mean where it begins with applicant?

Q. Yes.

A. Applicant personally appeared before the

board seeking a pardon to enable him to join certain professional organizations and also to be permitted to testify in his professional capacity as a psychological counselor. He assured the board that he has no desire to return to the practice of law as he is now an established psychologist and prefers this profession. He was disbarred due to his convictions and has lived in Florida for the past ten years.

Q. Now, was that your statement on there?

A. Yes.

Q. And when your statement that he assured the board that he had no desire to return to the practice of law, as he is now established as a psychologist and prefers this position, where did you get that information?

Hearing committee chairman: Profession.

Disciplinary counsel: And prefers this profession. Excuse me.

BY Disciplinary counsel:

Q. Where did you get that information from?

Petitioner's counsel: That's objected to.

THE WITNESS: From petitioner.

Hearing committee chairman: Objection. Do you object?

Petitioner's counsel: Yes, sir.

Hearing committee chairman: Overruled.

Petitioner's counsel: He has already gone through that.

Disciplinary counsel: You can testify.

Hearing committee chairman: Where did you get that information?

THE WITNESS: At the pardon board hearing in [   ]. The date of the hearing.

BY Disciplinary counsel:

Q. Who provided that information?

A. Petitioner.

While the witness may not have perceived the difference between a psychologist and psychotherapist, he was unequivocal in his testimony that petitioner assured the parole board that he did not intend to return to the practice of law, which fact is conceded by petitioner. Although petitioner claims he did not hold himself out to be a psychologist, he also concedes that his business cards bore the following initials after his name, "Ph.D., J.D."

Petitioner denies knowledge of requirements for beer and wine licenses in connection with restaurant ventures operated in Maryland prior to his residency in Florida. He denied signing or having knowledge of information on the renewal applications prepared by his venture partner, [ ], although he owned 51 percent of the stock and worked as a consultant to the corporation.

Petitioner, further, was unable to demonstrate any attempts to be conversant with the law in Pennsylvania but promised to become competent should he be reinstated. In addition, petitioner still feels that he did nothing wrong in the events which led to his criminal conviction, demonstrating an inability to recognize his own problems.

"Q. Petitioner, do you still believe you are snookered and you pled nolo contendere to all the indictments in the indictment of 44 t.v. sets and nine cases of liquor?

Petitioner's counsel: Objection.

Hearing committee chairman: Objection overruled. Answer the question the best of your ability.

THE WITNESS: I would say yes."

Petitioner was advised to seek psychiatric help in 1965 which not only did he fail to do, but we now find him dispensing therapy to other people. The reviewing panel, in the totality of these circum-

stances, felt that petitioner has failed to persuade them by clear and convincing evidence of his right to reinstatement.

Recommendation: The Disciplinary Board by unanimous vote recommends to your honorable court that the petition for reinstatement of petitioner be dismissed and that he be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Messrs. Anderson, Daniels, Krawitz and Elliott did not participate in the adjudication.